# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **KELLY MASTERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-05-S-1879-M** |
| | ) | |
| **CITY OF GLENCOE, *et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Kelly Smith Masters, commenced this action on September 8, 2005, asserting claims for sex-based discrimination, sexual harassment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*[1]  She named as defendants the City of Glencoe, Alabama, her former employer, and Chris Sims, a Councilman for the City of Glencoe.  The case presently is before the court on the motions for summary judgment by both defendants, and the motions, filed by both defendants, to strike certain portions of plaintiff's evidentiary submission.

---

[1]Doc. no. 1 (Complaint).  In the introductory paragraph of her complaint, plaintiff states that she is "seeking to recover damages for employment discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended."  *Id.* at 1.  Both counts of her complaint contain allegations relevant to these claims for discrimination and sexual harassment, as well as allegations to support claims for unlawful retaliation.  In Count I, plaintiff states that the City of Glencoe "retaliated against the Plaintiff when she complained about . . . discrimination."  *Id.* at ¶ 22(f).  In Count Two, she alleges that defendant Chris Sims "retaliated against her for reporting [his] misconduct."  *Id.* at ¶ 25(c).

## PART ONE

*Standard of Review*

Federal Rule of Civil Procedure 56(c) provides, in the part pertinent here, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Hayes v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted).

**PART TWO**

*Motions to Strike*

Both defendants have moved to strike portions of plaintiff's evidentiary submission.  Specifically, defendant Chris Sims has moved to strike plaintiff's entire affidavit as untimely.[2]  Defendant City of Glencoe has moved to strike paragraphs 4-8 of plaintiff's affidavit, because the statements made in those paragraphs are based upon inadmissible hearsay, and to strike the entirety of the affidavit, and its attachments, as untimely.  Glencoe also has moved to strike the affidavit of B.J. Alexander, included in plaintiff's evidentiary submission.[3]  Plaintiff concedes that the affidavit of B.J. Alexander should be withdrawn.[4]  The other aspects of the motions to strike will be discussed below.

**A.**   *Plaintiff's failure to timely disclose evidence*

First, defendants assert that the affidavit plaintiff submitted on April 13, 2006,[5] and the exhibit to that affidavit she submitted on April 20, 2006,[6] should be stricken

---

[2]*See* doc. no. 34.

[3]*See* doc. no. 38.

[4]*See* doc. no. 39 (plaintiff's response to motions to compel), at unnumbered page 4, ¶ 2.

[5]Doc. no. 29 (plaintiff's evidentiary submission), at Exhibit 1 (Affidavit of Kelly Masters).

[6]Doc. no. 32 (plaintiff's supplemental evidentiary submission), at Exhibit 1 (attachment to

because plaintiff failed to disclose the information contained within the affidavit and exhibit at an earlier date.  In her affidavit, plaintiff references the letter she sent to the EEOC on August 13, 2004.  She apparently intended to attach a copy of the EEOC letter to her affidavit, but she initially neglected to do so.  She later filed a copy of the letter as part of her supplemental evidentiary submission on April 20, 2006.

This court's Uniform Initial Order, which was entered in this case on October 7, 2005, requires that,

> [i]f this case is one in which the filing of a charge of discrimination with the Equal Employment Opportunity Commission or similar agency is required as a prerequisite to suit, then the **PLAINTIFF(S) MUST** file with the Clerk of Court <u>at the time of filing the disclosures required by Fed. R. Civ. P. 26(a)(1)</u>: (**A**) a copy of all charges of discrimination filed with the EEOC and which form the bases of the action; *and* (**B**) a copy of the EEOC's response to all such charges of discrimination filed with that agency, *including* the notice of right to sue.[7]

The parties agreed to exchange the information required by Fed. R. Civ. P. 26(a)(1) on or before January 5, 2006.[8]  Because plaintiff is offering her letter to the EEOC as an EEOC charge, defendants argue that she should have disclosed the letter by January 5, 2006.  Further, because she did not disclose the letter by that date, defendants argue she should be precluded, under Federal Rule of Civil Procedure

---

Masters Affidavit).

[7] Doc. no. 10, at § III (boldfaced and italicized emphasis in original; underlined emphasis supplied).

[8] Doc. no. 14 (Report of Parties' Planning Meeting), at ¶ 2.

37(c)(1), from relying upon the letter in opposition to defendants' motions for summary judgment.

Federal Rule of Civil Procedure 37(c)(1) provides:

(1) A party that *without substantial justification* fails to disclose information required by Rule 26(a)[9] or 26(e)(1),[10] or to amend a prior response to discovery as required by Rule 26(e)(2), is not, *unless such failure is harmless*, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1) (emphasis supplied).   In deciding whether to exclude

---

[9]Federal Rule of Civil Procedure 26(a) provides, in part, that

a party must, without awaiting a discovery request, provide to other parties:

. . . .

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment . . . .

Fed. R. Civ. P. 26(a)(1).

[10]Rule 26(e) provides, in part, that

[a] party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

(1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1).

evidence pursuant to Rule 37(c)(1), the Eleventh Circuit considers the following factors:  (1) the importance of the evidence; (2) the reason for the party's failure to disclose it earlier;[11] and (3) the prejudice to the opposing party if the evidence is allowed.[12]  *Bearint v. Dorel Juvenile Group, Inc.,* 389 F.3d 1339, 1353 (11th Cir. 2004) (citing *Rogers v. Muscogee County School District,* 165 F.3d 812, 818 (11th Cir. 1999)).[13]

Here, the court is not persuaded by plaintiff's reason for failing to disclose the EEOC letter earlier.  She blames her former attorney, Cliff Callis, for not filing the EEOC letter at the time designated for initial disclosures.  She asserts that she terminated Callis's services on February 1, 2006, and that she subsequently experienced difficulty obtaining her file from Callis's office.  This attempt to shift blame is unsuccessful, however, because plaintiff continues to be represented by attorney Cody Robinson, *who has represented her since the inception of this lawsuit.*[14]  There is no explanation for *Robinson's* failure to ensure that the EEOC

---

[11]This factor reflects the language in Rule 37(c)(1) that evidence will be excluded if the failure to disclose it earlier was "without substantial justification."  Fed. R. Civ. P. 37(c)(1).

[12]This factor reflects the provision in Rule 37(c)(1) that evidence will not be excluded if the failure to disclose it earlier is harmless.  Fed. R. Civ. P. 37(c)(1).

[13]The *Bearint* case concerned the exclusion of a trial witness who was not listed on the pretrial order, not exclusion of any documentary evidence.  Even so, the test for exclusion of evidence should apply to *any* evidence that can be excluded under Rule 37(c)(1), including documentary evidence that should have been disclosed pursuant to Rule 26(a) or (c).

[14]*See* doc. no. 1 (Complaint), at 7, bearing Cody Robinson's signature.

letter was disclosed in a timely manner.

The other factors, however, do weigh in plaintiff's favor.  First, as will become apparent in Part Four, *infra*, consideration of plaintiff's August 13, 2004 letter to the EEOC is essential in determining whether plaintiff's claims should be dismissed for failure to file a timely administrative charge.  Further, little prejudice will result to defendants from the court's consideration of the letter, and the affidavit to which the letter was attached.  Only one of the defendants, the City of Glencoe, has attempted to argue prejudice.  Glencoe asserts that it formed its defense strategy based primarily on the premise that plaintiff had not filed a timely administrative charge.  The court acknowledges that, if Glencoe had received a copy of plaintiff's letter earlier, it might have made *some* changes in its defense strategy, but the court does *not* believe these changes would have been as substantial as Glencoe suggests.  Indeed, even *after* it became aware of plaintiff's EEOC letter, Glencoe still argued plaintiff's failure to file a timely administrative charge.[15]  Thus, the court concludes that plaintiff's late disclosure of her August 13, 2004 EEOC letter did not cause Glencoe to alter its defense strategy to such a degree that Glencoe suffered prejudice as a result.

---

[15]Glencoe first received a copy of plaintiff's letter on April 20, 2006, when plaintiff filed it as part of her supplemental evidentiary submission, but Glencoe was aware of the letter as early as April 13, 2006, when plaintiff referenced the letter in the affidavit she filed in response to both defendants' motions for summary judgment.  Glencoe clearly had an opportunity to read and evaluate plaintiff's letter prior to filing its reply brief, because Glencoe's brief discusses the letter in detail. *See* doc. no. 36 (reply brief by the City of Glencoe), at 7-12.

Further, the effect of any prejudice that either defendant may have suffered as a result of plaintiff's late disclosure of her EEOC letter is diminished by the fact that defendants received the letter well before the discovery period closed on June 1, 2006. If the information contained in plaintiff's letter prompted defendants to ask for follow-up information, or to change their litigation strategies, defendants had the opportunity to conduct further discovery. The court notes, in particular, that neither defendant moved to extend the discovery deadline *after* plaintiff filed her affidavit and EEOC letter.[16]

In summary, because the information contained within plaintiff's affidavit, and within the August 13, 2004 letter appended to the affidavit, is essential to plaintiff's ability to prove her case, and because no party suffered substantial prejudice as a result of plaintiff's late disclosure of the affidavit and its attachments, the court will not strike the affidavit as untimely.

**B.**     *Hearsay*

Defendant City of Glencoe also asserts, without further explanation or briefing, that "[p]aragraphs 4, 5, 6, 7, and 8 of Plaintiff Kelly Masters' affidavit are inadmissible hearsay and/or not based on personal knowledge."[17]     In those

---

[16]The parties did file a joint motion for extension of the discovery deadline on April 12, 2006, one day *before* plaintiff submitted her affidavit in opposition to defendants' motions for summary judgment. *See* doc. no. 28. No subsequent motions were filed.

[17]Doc. no. 38 (motion to strike by City of Glencoe), at ¶ 2.

paragraphs, plaintiff states:

> 4.    Toward the end of September, 2004, I received a telephone call from someone identifying themselves as a representative from the EEOC acknowledging receipt of my complaint and requesting additional information.

> 5.    This individual did not leave their name or a telephone number for me to return their call.

> 6.    Shortly thereafter, I contacted the EEOC and informed them of the telephone call I had received and asked what additional information they needed.  The EEOC representative I spoke with was not familiar with my case and was not aware of who might have contacted me.  However, the representative did check on the status of my case and informed me that everything appeared to be in order with my file and that she did not see any additional information was needed.

> 7.    As of February, 2005, I still had not received any information from the EEOC, so I went to see my attorney.  He contacted EEOC via letter, asking for an update on my case.  EEOC responded that they had dismissed my case and that, in order to have the EEOC investigate it further, I needed to file an official Form 5 Charge of Discrimination.

> 8.    My attorney complied with this request and filed the Form 5 immediately thereafter.[18]

Plaintiff's only response to this argument is that "[t]he averments in paragraphs 4, 5, 6, 7 and 8 are most certainly based on personal knowledge and are therefore not hearsay."[19]

---

[18]Doc. no. 29 (plaintiff's evidentiary submission), Exhibit A (Affidavit of Kelly Masters), at ¶¶ 4-8.

[19]Doc. no. 39 (plaintiff's response to defendants' motions to strike), at second paragraph 1.

Plaintiff improperly equates the concepts of "based on personal knowledge" and "hearsay."  Federal Rule of Civil Procedure 56 requires that affidavits submitted in support of, and in opposition to, a motion for summary judgment must "be made on personal knowledge."  Fed. R. Civ. P. 56(e).  The statements plaintiff made in paragraphs 4-8 of her affidavit clearly were based on her personal knowledge.  Plaintiff would have been personally aware of the contacts she and her attorney had with the EEOC, and what actions her attorney took on her behalf.

Hearsay, of course, is a separate concept.  The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  "Hearsay is not admissible except as provided by" the Federal Rules of Evidence.  Fed. R. Evid. 802.  Thus, hearsay becomes a relevant issue on summary judgment because, when evaluating a motion for summary judgment, "a court may only consider evidence that is admissible or that could be presented in admissible form" at trial.  *Denney v. City of Albany,* 247 F.3d 1172, 1189 n.10 (11th Cir. 2001) (citing *Prichard v. Southern Company Services,* 92 F.3d 1130, 1135 (11th Cir. 1996) (holding that a plaintiff "cannot use inadmissible hearsay to defeat summary judgment when that hearsay will not be reducible to admissible form at trial") (in turn citing *McMillian v. Johnson,* 88 F.3d 1573, 1583-84 (11th Cir. 1996)

(same)).

Glencoe's one-sentence argument does not convince the court that paragraphs 4-8 of plaintiff's affidavit should be excluded as inadmissible hearsay. Glencoe has failed to demonstrate why the statements made in those paragraphs constitute "hearsay,"[20] why no exception to the hearsay rule applies, why the Federal Rules of Evidence would govern the court's evaluation of plaintiff's exhaustion of administrative remedies,[21] or why the evidence (if it is hearsay) could not be presented in admissible form at trial.[22] Further, even assuming that the statements made in paragraphs 7 and 8 of plaintiff's affidavit — concerning the communications plaintiff's attorney had with the EEOC — *are* hearsay, any hearsay objection to those statements could be cured by the affidavit of Bernice Williams-Kimbrough, the

---

[20]For example, what statements are being offered to prove the truth of the matter(s) asserted therein, and what statements are being offered for other purposes, such as to show the effect of the EEOC's statements on plaintiff's state of mind? *See* Fed. R. Evid. 801(c). Also, could the EEOC be considered a "party," such that any of the statements made by its employees are "admissions by a party opponent" under Rule 801(d)(2)? *See* Fed. R. Civ. P. 801(d)(2).

[21]The court cannot imagine a case in which the issue of exhaustion of administrative remedies would be tried to a jury. Because the issue is a legal one for the court to decide, then the court questions whether the Federal Rules of Evidence apply. Federal Rule of Evidence 1101 provides, in part, that the Federal Rules of Evidence do not apply in "[t]he determination of questions of fact preliminary to admissibility of evidence *when the issue is to be determined by the court under rule 104*." Fed. R. Evid. 1101(d)(1) (emphasis supplied). Rule 104(a) provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . . *In making its determination it is not bound by the rules of evidence* except those with respect to privileges." Fed. R. Evid. 104(a)(emphasis supplied).

[22]For example, could plaintiff present the evidence in an admissible form at trial, if she offered the testimony of an EEOC representative?

Director of the Birmingham District Office of the EEOC.[23]  Williams-Kimbrough

confirmed the communications between plaintiff's counsel and the EEOC, based

upon her examination of the EEOC's records.  Her testimony as the custodian of the

EEOC's official records is admissible.  *See* Fed. R. Evid. 803(6).  In addition, as set

out in Part Four, *infra*, consideration of the statements made in paragraphs 4-8 of

plaintiff's affidavit is not determinative of the outcome of defendants' motions for

summary judgment.  Finally, the court notes that the Eleventh Circuit, in prior cases,

has considered statements similar to those made in paragraphs 4-8 of plaintiff's

affidavit, *without a hearsay objection*, in determining whether a claimant's informal

submission constituted a formal charge.  *See, e.g., Wilkerson v. Grinnell Corp.,* 270

F.3d 1314, 1321 (11th Cir. 2001) (considering the details of the conversations

between the plaintiff and the EEOC).

Both defendants' motions to strike will be denied.  The court will consider the

entirety of plaintiff's affidavit, and its attachments, in evaluating defendants' motions

for summary judgment.

## PART THREE

*Summary of Facts Relevant to the Underlying Administrative Proceedings*

Plaintiff, Kelly Smith Masters, worked as a police officer for the City of

---

[23]Doc. no. 39 (plaintiff's response to defendants' motions to strike), at Exhibit B (Affidavit of Bernice Williams-Kimbrough).

Glencoe, Alabama, from November of 2002 until August 6, 2004, when she resigned.[24]  Defendant Chris Sims was a Councilman for the City of Glencoe during that time period.[25]  The specific facts underlying plaintiff's substantive claims are not relevant to the motions considered in this opinion, but the essence of her allegations is as follows:  that Sims repeatedly made lewd, sexually explicit comments to her on the job; that he suggested she would lose her job if she did not engage in sexual acts with him; that she reported Sims' behavior to the Chief of Police, who took no responsive action; that she was retaliated against for lodging the harassment complaint; and, that she was forced to resign from her job as a City of Glencoe police officer because Sims' harassment was so severe.[26]

Plaintiff sent an unsigned letter to the Equal Employment Opportunity Commission ("EEOC") on August 13, 2004, complaining about Sims' alleged behavior.[27]  The first page of the letter set forth plaintiff's name, address, telephone number, Social Security number, date of birth, race, and sex; the name, address, and telephone number of her employer; her immediate supervisor's name; and a Human

---

[24]Doc. no. 24 (evidentiary submission of defendant City of Glencoe), Exhibit 1 (Deposition of Kelly Smith (now Masters) in *Smith v. City of Glencoe,* Civil Action No. CV-04-918-WAM in the Circuit Court of Etowah County, Alabama), at 12-13.

[25]*See* doc. no. 8 (Answer of Chris Sims), at ¶ 4.

[26]*See* doc. no. 1 (Complaint).

[27]Doc. no. 29 (plaintiff's evidentiary submission), Exhibit A (Affidavit of Kelly Masters), at ¶ 3; doc. no. 32 (plaintiff's supplemental evidentiary submission), at Exhibit A (letter).

Resources contact.[28]  On the following five pages, plaintiff described in detail the reasons she felt she had been discriminated against and harassed, dating back to August of the prior year.  She stated that "[the discrimination] started with sexual harassment and moved to sexual discrimination and now has graduated into a hostile enough working environment that I had to resign today."[29]  Plaintiff stated in her affidavit that, in late September 2004, she received a telephone call from an EEOC employee, "acknowledging receipt of [her] complaint and requesting additional information."[30]  "Shortly thereafter," plaintiff contacted the EEOC to find out what additional information would be necessary, and spoke to a different employee.[31]  After checking plaintiff's file, the employee informed plaintiff that "everything appeared to be in order," and that "she did not see that any additional information was needed."[32]

Plaintiff testified that she did not have any further contact with the EEOC until February of 2005.  At that time, her attorney wrote a letter to the EEOC, asking for an update on the status of plaintiff's file.[33]  The EEOC responded on March 25, 2005,

---

[28]Doc. no. 32 (plaintiff's supplemental evidentiary submission), Exhibit A (letter), at unnumbered page 1.

[29]*Id.* at unnumbered page 2.

[30]Masters Affidavit, at ¶ 4.

[31]*Id.* at ¶ 6.

[32]*Id.*

[33]*Id.* at ¶ 7.

confirming that it had received a letter from plaintiff on August 24, 2004, and stating that "the facts presented in the letter were insufficient for this office to determine jurisdiction."[34]   The letter further stated that the EEOC had submitted a written request for additional information to plaintiff on December 28, 2004, and had advised plaintiff that, if she did not contact the local EEOC office within thirty (30) days, her file would be closed.[35]   Plaintiff states that she did not receive the EEOC's December 28 request.   The EEOC noted that plaintiff failed to contact its office, and so, plaintiff's file was closed.   The letter further advised that,

> [i]f it is Ms. Masters' wish to proceed and thereby satisfy the statutory and procedural requirements for the filing of a charge, she should submit a charge of discrimination (EEOC Form 5) signed under penalty of perjury.   At a minimum, the charge should contain the following information:
>
> 1.    The full name and address and telephone number of the employer.
> 2.    The date of any discriminatory act and a complete description of the act.
> 3.    A brief statement of the grounds for her belief that she has been discriminated against.
>
> Upon receipt, the matter will be set for processing in accordance with the statutes and the Commission's Procedural Regulations.[36]

---

[34]Doc. no. 29, Exhibit E (March 25, 2005 letter from the Equal Employment Opportunity Commission to Cody D. Robinson, plaintiff's attorney), at 1.

[35]*Id.*

[36]*Id.*

Plaintiff executed a formal charge of discrimination on EEOC's Form 5 on April 22, 2005.  The charge was received by the Birmingham District Office of the EEOC on May 5, 2005.[37]  On the charge form, plaintiff provided her name, address, telephone number, and date of birth.  She also stated the name, number of employees, telephone number, and address of her former employer.  She indicated that the discrimination she had suffered was based upon her sex, and that it had lasted from August of 2003 to August of 2004.[38]  She stated that her complaint "began with sexual harassment which escalated to gender discrimination and a threatening and hostile work environment."[39]  More specifically, she stated:

> In August, 2003, City Councilman Chris Sims, began sexually harassing me.  As it became unbearable, I reported his inappropriate behavior to my immediate supervisor on numerous occasions, but no action was taken.  Sims [sic] actions, along with certain other co-workers, superiors (including the now ex-mayor) progressed over the months with continuing sexual comments and suggestions which became hostile and threatening.  Sims actively and persistently did things to try to get me fired and/or to put me in situations where I would not have "back-up" assistance when needed.[40]

The EEOC issued plaintiff a Dismissal and Notice of Right to Sue on June 8, 2005, stating, "[y]our charge was not timely filed with the EEOC; in other words, you

---

[37]Doc. no. 20 (evidentiary submission of defendant Chris Sims), at Exhibit 2 (EEOC Charge); doc. no. 24 (evidentiary submission of defendant City of Glencoe), at Exhibit 2 (EEOC Charge).

[38]*Id.*

[39]*Id.*

[40]*Id.*

waited too long after the date(s) of the alleged discrimination to file your charge."[41]
The EEOC advised plaintiff that she could file a lawsuit in state or federal court
within 90 days.[42]  Plaintiff filed this case on September 8, 2005.[43]

**PART FOUR**

*Timeliness of Plaintiff's EEOC Charge*

Both defendants argue that summary judgment should be granted in their favor
because plaintiff failed to file a timely charge of discrimination with the EEOC.  A
plaintiff must satisfy a number of administrative prerequisites before filing a suit
based upon Title VII.  Foremost among these is the requirement that a charge of
discrimination be submitted to the EEOC within 180 days "after the alleged unlawful
employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Alexander
v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("No action alleging a
violation of Title VII may be brought unless the alleged discrimination has been made
the subject of a timely-filed EEOC charge."); *Stafford v. Muscogee County Board of
Education*, 688 F.2d 1383, 1387 (11th Cir. 1982) ("In order to assert a claim of racial
discrimination under Title VII, a claimant must file a complaint with the EEOC

---

[41]Doc. no. 20 (evidentiary submission of defendant Chris Sims), at Exhibit 3 (Dismissal and
Notice of Rights); doc. no. 24 (evidentiary submission of defendant City of Glencoe), at Exhibit 3
(Dismissal and Notice of Rights).

[42]*Id.*

[43]Doc. no. 1 (Complaint).

within 180 days after the alleged discriminatory practice occurred.").

Defendants point out that the last allegedly discriminatory act relevant to plaintiff's claims would necessarily have occurred before August 24, 2004, because that is the date on which plaintiff left her employment with the City of Glencoe.[44] Thus, defendants argue that plaintiff was required to file an EEOC charge within 180 days of her last day of employment, or by sometime in February of 2005. Because plaintiff did not file a formal charge until May 5, 2005, defendants assert that her claims in this case are barred for failure to timely pursue Title VII's administrative remedies.

Plaintiff, on the other hand, argues that she filed a timely charge when she submitted her unsigned, unverified letter to the EEOC on August 13, 2004. She also asserts that her May 5, 2005 submission was merely an amendment to her earlier charge, and that the filing date of her amended submission should relate back to the original August 13, 2004 filing.

EEOC regulations state that charges should contain:

1.  The full name, address and telephone number of the person making the charge . . .;

2.  The full name and address of the person against whom the charge is made, if known . . .;

---

[44]Plaintiff does not dispute that any discriminatory or harassing behavior would necessarily have ended in August of 2004, when she left her employment with the City of Glencoe.

3.     A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices . . .;

4.     If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

5.     A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1601.12(a) (2006).   Even if a charge does not contain all of this

information, it will suffice

when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.  *A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.*

29 C.F.R. § 1601.12(b) (2006) (emphasis supplied).   The Supreme Court recently

affirmed the validity of this regulation, and particularly the "relation-back" principle.

*See Edelman v. Lynchburg College,* 535 U.S. 106 (2002).[45]

---

[45]In that case, Lynchburg College denied tenure to Edelman, the plaintiff, and Edelman sent an unsworn, unverified letter to the EEOC approximately five months later, claiming discrimination on the basis of gender, national origin, and religion.  *Id.* at 109.  After some contact with the EEOC

Based upon 29 C.F.R. § 1601.12(b), it is clear that, *if* plaintiff's August 13, 2004 letter can be considered a "charge" under the pertinent statutory and regulatory provisions, then the May 5, 2005 formal, verified, Form 5 Charge of Discrimination will be considered an amendment to the earlier charge; the filing date of the formal charge will relate back to the date of the August 13, 2004 letter; and plaintiff's administrative complaint will be considered timely.   Thus, the pertinent issue is

---

field office, Edelman submitted a formal, verified EEOC Form-5 Charge on April 15, 1998, which was thirteen days after the filing period had expired. *Id.* When Edelman later filed suit under Title VII, the college moved to dismiss his claims for failure to exhaust administrative remedies. *Id.* at 110. Edelman argued that his charge was timely, because the filing date for his formal charge should have related back to the date of his unverified letter. The college challenged the validity of 29 C.F.R. § 1601.12(b), and particularly the provision allowing an amended charge to relate back to the date of original filing. The Supreme Court upheld the regulation, stating that

> [c]onstruing [Title VII] to permit the relation back of an oath omitted from an original filing ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently. At the same time, the EEOC looks out for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied.

*Edelman,* 535 U.S. at 115, 118-19. However, the Court did not reach the factual question of whether Edelman's initial letter to the EEOC did not constitute a charge "because neither he nor the EEOC treated it as one." *Id.* at 118-19. Instead, the Court concluded that it was

> enough to say here that at the factual level [that] view has some support. Although § 706(e)(1) of Title VII provides that the "notice of the charge . . . shall be served upon the person against whom such charge is made within ten days" of filing with the EEOC, 42 U.S.C. §§ 2000e-5(b) and (e)(1), the Government's lawyer acknowledged at oral argument that the EEOC failed to "comply with its obligation to provide the employer with notice" within 10 days after receiving Edelman's letter of November 14, 1997.

*Id.* at 119. The Court left the issue of whether Edelman's original letter constituted a charge open on remand. *Id.*

whether the August 13, 2004 letter was a valid "charge."

The Eleventh Circuit has not reached the precise issue of whether an unsigned and unverified letter sent to the EEOC will constitute a charge of discrimination for administrative exhaustion purposes. Nonetheless, the Eleventh Circuit has rendered an instructive line of cases discussing whether a complaining party's answers on an EEOC *intake questionnaire* can constitute a valid charge. First, in *Pijnenburg v. West Georgia Health System, Inc.,* 255 F.3d 1304 (11th Cir. 2001), the plaintiff did not file a timely verified charge, but she did file her *unsworn* responses to an EEOC intake questionnaire within the 180-day limitations period. *Id.* at 1305. The court held that

> an intake questionnaire does not constitute a valid charge under Title VII for purposes of the statute of limitations. If it were to be so, the statute and regulations could so provide. Unlike the filing of answers to the interview questions in this case, a charge, in addition to triggering the running of the statute of limitations, serves two significant functions: (1) notification to the employer that a discrimination charge has been lodged with the EEOC; and (2) initiation of the agency's investigation of the complaint. Neither of these two functions is satisfied by the filing of an Intake Questionnaire. To randomly treat this questionnaire as a charge would thwart these two objectives, and thereby render arbitrary what the agency has attempted to make uniform.

*Pijnenburg,* 255 F.3d at 1306-07. The court took care to note, however, that it was not deciding "whether a questionnaire *that otherwise contains the necessary information and the requirements for a valid charge* could never be considered a charge for timeliness purposes." *Id.* at 1307 (emphasis supplied).

Just a few months later, in *Wilkerson v. Grinnell Corp.,* 270 F.3d 1314 (11th Cir. 2001), the Eleventh Circuit held that an EEOC intake questionnaire *did* constitute a valid charge. In that case, Wilkerson completed an EEOC intake questionnaire form just days after the termination of her employment, alleging race and sex discrimination. *Id.* at 1316. On the form, she listed her name, address, and telephone number; the name and address of her former employer; and the names of two employees involved in the alleged discrimination. *Id.* She also attached a seven-page narrative to the form, giving the details of the discrimination she allegedly had suffered. *Id.* At the end of the form, she signed her name under the following statement: "'I swear or affirm under penalty of perjury that the provided information is truthful and correct to the best of my knowledge.'" *Id.* After it received the form, the EEOC informed Wilkerson that it would contact her if it needed any additional information. *Id.* Approximately nine months later, Wilkerson had not heard from the EEOC, so she contacted her local office and was informed that the EEOC had mailed additional questions to her several months before, which she did not receive. *Id.* The EEOC informed Wilkerson that it "would proceed on the basis of her questionnaire," and sent a Notice of Charge to her former employer. *Id.* Despite this representation, however, the EEOC later re-reviewed Wilkerson's file, dismissed her charge as untimely, and issued her a notice of right to sue. *Id.* After Wilkerson protested, the

EEOC revoked the prior right to sue letter finding her charge untimely and issued her a new right to sue letter. *Id.* Wilkerson later filed suit in federal court, and her former employer moved to dismiss on the ground that Wilkerson had failed to file a timely administrative charge. *Id.* at 1317.

In evaluating the timeliness of plaintiff's administrative submissions, he Eleventh Circuit adopted the "manifest-intent" approach. In other words, the court considered the following question: "Would the circumstances of this case convince a reasonable person that Wilkerson manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC?" *Id.* at 1320 (citing *Diez v. Minnesota Mining & Mfg. Co.,* 88 F.3d 672, 676 (8th Cir. 1996)). The court considered facts such as "what Wilkerson and EEOC personnel said to each other, what the questionnaire form itself indicated, and how the EEOC responded to the completed questionnaire." *Wilkerson,* 270 F.3d at 1320 (citing *Diez,* 88 F.3d at 676). The court concluded that the following circumstances "would convince a reasonable person that Wilkerson manifested her intent to activate the administrative machinery": *i.e.,*

> When Wilkerson first contacted the EEOC, she explained her situation to an EEOC employee. The employee then mailed the questionnaire to Wilkerson, and Wilkerson returned it almost immediately. A few weeks later, Wilkerson contacted the EEOC, and the same employee told Wilkerson that she would have to wait her turn because there were

people in front of her.  The EEOC employee was aware of Wilkerson's discharge date, so Wilkerson could have easily assumed that the EEOC would protect her interests.

> Additionally, the questionnaire form itself indicated that it could be a charge.  On the first page of the questionnaire, the fifth instruction reads as follows: "A charge of employment discrimination must be filed with the EEOC within *180 days* of the date of the alleged discriminatory action taken against you." . . .  Even a careful reader could interpret this charge deadline to refer to the filing of the questionnaire.

> The first page also includes a space for the filing party's social security number that is labeled "SOCIAL SECURITY NO:*." . . . The asterisk leads to the Privacy Act Statement on the third page. . . .  This statement says that the "EEOC will use your social security number to distinguish you and your charge information from anyone else who might have a similar or identical name." . . .  It also states that "[f]urnishing your social security number is voluntary.  Your charge will be processed whether or not you furnish the information." . . .  In other words, if the filing party provides her social security number in the available space, the EEOC will use it for identification purposes; if not, the EEOC will process the charge anyway.  This series of statements indicates that the questionnaire is either a charge or initiates the charging process.

> The last page of the document also indicates that the questionnaire is a charge.  This page is labeled "EEOC/Savannah Local Office" followed by "Charge Receipt/Technical Information." . . .  This document label implies that the questionnaire is a charge.  The last page also includes a place for the filing party to verify the document under penalty of perjury.  Such verification indicates to the filing party that the information must be accurate because it is legally significant.  When all of these indications are taken together, a filing party could easily construe the questionnaire as a charge.  Moreover, the questionnaire itself does not say that it is merely a questionnaire and not a charge.

*Wilkerson,* 270 F.3d at 1320-21 (emphasis and bracketed alterations in original).

Based on all of the foregoing factors, the Eleventh Circuit held that

> a verified intake questionnaire that includes the basic information suggested by 29 C.F.R. § 1601.12(a) *may* constitute a charge for purposes of the Title VII statute of limitations when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC.  The circumstances of this case, including Wilkerson's conversations with the EEOC, the misleading indications of the intake questionnaire form, and the EEOC's ultimate response, show that Wilkerson manifested such an intent by submitting her verified intake questionnaire to the EEOC.  Accordingly, Wilkerson's intake questionnaire satisfied the charge requirement of Title VII's statute of limitations.

*Id.* at 1321 (emphasis supplied).

In contrast, in *Bost v. Federal Express Corp.,* 372 F.3d 1233 (11th Cir. 2004), the Eleventh Circuit held that, under the circumstances of that case, an intake questionnaire did *not* constitute a charge.  There, Bost, the plaintiff, filed a timely intake questionnaire with the EEOC, alleging age discrimination by his employer. *Id.* at 1326.  Bost signed the questionnaire, which provided a name, address, and telephone number for both himself and his employer.  *Id.*  He also submitted a notarized affidavit, detailing the discrimination and harassment he allegedly had endured.  *Id.*  Bost did not file a formal charge of discrimination with the EEOC until several months later.  *Id.*[46]

---

[46]In *Bost,* the Eleventh Circuit was required to decide if Bost's suit was filed prematurely, not late.  Bost filed a formal EEOC charge of discrimination *after* he filed suit in federal court.  *See Bost,* 372 F.3d at 1236, 41.

On appeal, the Eleventh Circuit held that Bost's questionnaire and affidavit did not constitute a valid charge, and distinguished the "exceptional circumstances" of prior precedent, including *Wilkerson*. *Bost,* 372 F.3d at 1240-41. Specifically, the court noted that the EEOC did not treat Bost's questionnaire as a charge. Indeed, the agency did not respond to the questionnaire in any manner, and did not provide notice to Bost's employer until *after* Bost filed a formal charge form months later. *Id.* Second, in contrast to the *Wilkerson* case, Bost did not "manifest[] an intent to activate the administrative process by filing his intake questionnaire with the EEOC." *Id.* at 1241. Instead, Bost demonstrated that he *did not* intend his intake questionnaire to be a charge, because he later filed a timely formal charge. The Eleventh Circuit concluded that, "[i]f Bost believed that he had filed a charge of discrimination when he filed the intake questionnaire, he would not have filed an additional timely charge of discrimination." *Id.* Third, the Eleventh Circuit determined that there was no misleading communication — or any communication at all — between Bost and the EEOC. *Id.* Finally, "the questionnaire form itself did not suggest that it was a charge. The Privacy Act Statement at the end of the intake questionnaire instead stated that the questionnaire was not the equivalent of a charge of discrimination." *Id.* The Privacy Act Statement also referenced "'potential charges'" and indicated its purpose was to provide "'pre-charge filing counseling.'" *Id. Compare Daniels v. Mobile*

*Register, Inc.,* No. Civ.A.04-0832-L, 2005 WL 1505856 (S.D. Ala. June 24, 2005) (holding that an unverified letter to the EEOC did not constitute a valid charge, despite the fact that it arguably contained information sufficient to satisfy 29 C.F.R. § 1601.12, because the EEOC did not treat it as a charge), *with Ayers v. Wal-Mart Corp.,* No. 3:04CV1002-T, 2005 WL 4795035 (M.D. Ala. Oct. 7, 2005) (holding that an employee's informal complaint letter to the EEOC constituted a charge when it contained all the information prescribed by the regulations, *and*, in response to the letter, the EEOC completed a formal charge form and sent it to the employee).

Here, plaintiff's August 13, 2004 letter contained information sufficient to satisfy the basic regulatory definition of a charge.  Plaintiff stated her full name, address, telephone number, and Social Security number.  She also provided the name, address, and telephone number of her former employer, along with the names of her supervisor and a human resources contact.  She submitted a five-page statement detailing the facts to support her claim of discrimination.  She did not sign the letter, state the number of individuals employed by her former employer, or state whether she had presented a claim to a state or local agency.  Despite these omissions, however, plaintiff's letter was "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(a)(1) (2006).

Additionally, the text and form of plaintiff's letter indicate that she could have intended it to serve as a charge, and so to activate Title VII's investigative machinery. *See Wilkerson,* 270 F.3d at 1320 (holding that a charge is valid if "the circumstances of th[e] case [would] convince a reasonable person that [the claimant] manifested her intent to activate the machinery of Title VII"). Plaintiff included *most* of the information required by federal regulations, and, importantly, she described the harassment and discrimination she allegedly suffered with great detail. She also acknowledged the 180-day limitations period, stating, "I know that you can only go back 180 days but the discrimination has not ended."[47] This statement indicates that plaintiff was aware of the time limitations on information that can be included *in a charge*. *See Wilkerson,* 270 F.3d at 1320-21 (considering the language on the form submitted to the EEOC in determining whether the form was a valid charge).

On the other hand, the actions taken by the EEOC in response to plaintiff's letter do not indicate that the EEOC considered the letter to be a charge. Importantly, the EEOC did not provide notice of plaintiff's allegations to defendant until *after* plaintiff filed a formal, verified charge using EEOC's Form 5.[48] Further, the EEOC

---

[47] Doc. no. 32 (plaintiff's supplemental evidentiary submission), Exhibit A (plaintiff's August 13, 2004 letter to the EEOC), at 2.

[48] This is consistent with what the Supreme Court has termed "[t]he general practice of EEOC staff members." *Edelman,* 535 U.S. at 115 n.9. The Court has noted that the EEOC generally will "prepare a formal charge of discrimination for the complainant to review and to verify, once the allegations have been clarified. . . . The complainant must submit a verified charge before the

did not commence a formal investigation upon receiving plaintiff's letter.  *See Pijnenburg,* 255 F.3d at 1306-07 (noting that "(1) notification to the employer that a discrimination charge has been lodged with the EEOC; and (2) initiation of the agency's investigation of the complaint" are two "significant functions" served by a charge); *Wilkerson,* 270 F.3d at 1321 (considering the EEOC's response to the claimant's submission in determining whether it was a valid charge); *Bost,* 372 F.3d at 1240-41 (holding that the EEOC did not treat the claimant's submission as a charge when it did not respond to the submission in any way, and it did not provide notice of the charge to the employer until *after* the plaintiff had filed a formal charge).

This court concludes, nevertheless, that the EEOC's failure to respond to plaintiff's letter should not be held against plaintiff.  *See Edelman v. Lynchburg College,* 300 F.3d 400, 404-05 (4th Cir. 2000) ("Once a valid charge has been filed, a simple failure by the EEOC to fulfill its statutory duties regarding the charge does not preclude a plaintiff's Title VII claim."); *Forehand v. Florida State Hospital,* 89 F.3d 1562, 1570-71 (11th Cir. 1996) (stating that "any deficiency in the EEOC's performance of its duties should not adversely affect a plaintiff's right to sue"). Plaintiff's initial complaint letter to the EEOC made it clear that she wanted to pursue an administrative claim against her former employer.  Stated differently, the letter

---

agency will require a response from the employer."  *Id.*

"manifested her intent" to activate the EEOC's investigative process.  That fact alone is sufficient to support the conclusion that plaintiff's letter was a valid charge, even without considering the paragraphs of plaintiff's affidavit which the City of Glencoe alleges are hearsay.

Considering the questioned portions of plaintiff's affidavit even further supports the court's conclusion.  In those paragraphs, plaintiff stated that, in September of 2004, after she sent her letter to the EEOC, she received a telephone call from an EEOC representative, acknowledging receipt of the letter and requesting additional information.  When plaintiff contacted the EEOC to comply with this request, a different representative informed her that her file was complete, and no additional information would be necessary.  Despite this representation, the EEOC again wrote to plaintiff on December 28, 2004, requesting additional information and informing her that, if she did not provide the information within thirty days, her file would be closed.  Plaintiff did not receive this letter, and she was therefore unaware of her responsibility to provide the EEOC with any additional information.[49]  The EEOC subsequently closed plaintiff's file, and it considered the formal charge she filed months later, in May of 2005, to be untimely.

---

[49]*See* Masters Affidavit, at ¶ ("As of February, 2005, I still had not received any information from the EEOC, so I went to see my attorney.").  The December 28, 2004 letter was not preserved in the EEOC's file.  *See* Williams-Kimbrough Affidavit, at ¶ 9(c).

Construing these facts in the light most favorable to plaintiff, it was reasonable for plaintiff to conclude that, as of September of 2004, she had submitted all the information necessary for the EEOC to process her complaint.  Plaintiff actively pursued her claim until an EEOC representative informed her in September of 2004 that her file was complete.  Based on that representation, it was reasonable for plaintiff to conclude that her role in the process was over, and that she should simply wait for the EEOC to process her claim.  After she had waited for several months with no word from the EEOC, she acted responsibly and took steps to follow up on her claim with the EEOC.[50]  Plaintiff should not be penalized for relying upon the advice of an EEOC representative that she did not need to take further action, even if that advice turned out to be incorrect.  *See Wilkerson,* 270 F.3d at 1321 (considering the potentially misleading communications by the EEOC in determining that the plaintiff's intake questionnaire was not a charge).

In summary, the court concludes that plaintiff's August 13, 2004 letter to the EEOC was sufficient to constitute a valid charge of discrimination.  Therefore, the filing date of the formal, "Form 5" charge plaintiff filed on May 5, 2005 should have

---

[50]The EEOC's assertion — that it sent plaintiff a letter on December 28, 2004, requesting additional information and warning her that her claim would be dismissed if she did not follow up — does not change this conclusion.  Plaintiff does not acknowledge receiving this December 28 letter, and the EEOC has no official record of it either.  As all facts must be construed in the light most favorable to plaintiff, the court must conclude that plaintiff did not receive the December 28 letter from the EEOC, and she did not fail to comply with any responsibilities set forth in that letter.

"related back" to the date of the August 13, 2004 letter. *See* 29 C.F.R. § 1601.12(b). Because plaintiff sent the August 13, 2004 letter within 180 days of when the last allegedly unlawful employment practice by defendant occurred, plaintiff filed a timely administrative charge of discrimination with the EEOC. Her claims in this suit will not be dismissed for failure to timely pursue her administrative remedies.[51]

## PART FIVE

### *Sims' "Employer" Status*

Defendant Chris Sims argues that plaintiff's claims against him should be dismissed, because he was not plaintiff's "employer." Courts have consistently held that only those persons who are "employees" may bring a Title VII suit against an "employer" engaged in an "industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." *See* 42 U.S.C. § 2000e(b); *Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1242-43 (11th Cir. 1998) (listing cases).[52]

---

[51]This opinion does not consider whether plaintiff has presented evidence to satisfy all elements of her claims for sexual harassment and sex discrimination, as defendant did not move for summary judgment on that basis.

[52]The Eleventh Circuit has stated that

[t]his limitation is necessary to further Congress' intent in enacting Title VII. "Title

This statute does not allow suits against individual defendants *in their individual capacities.*

> Individual capacity suits under Title VII are . . . inappropriate. The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer, **either** by naming the supervisory employees as agents of the employer **or** by naming the employer directly.

*Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (citations omitted) (italicized emphasis in original; boldface emphasis supplied). "The only proper individual defendants in a Title VII action would be supervisory employees [who are sued] *in their capacity as agents of the employer*." *Hinson v. Clinch County*, 231 F.3d 821, 827 (11th Cir. 2000) (emphasis supplied). Indeed, plaintiff appears to concede that she cannot proceed against Sims in his individual capacity.

Thus, the remaining question is whether plaintiff may proceed against Sims in his *official* capacity. Plaintiff argues, based upon the decision of the Eleventh Circuit

---

VII does not presume to obliterate all manner of inequity." *Keyes v. Secretary of the Navy*, 853 F.2d 1016, 1026 (1st Cir. 1988). Instead, Congress intended to limit the scope of the Act to specific employment relationships; thus, the statute provides relief only against "employers" as defined under the statute. We can assume that Congress also meant to limit the pool of potential plaintiffs under Title VII; otherwise, any person could sue an "employer" under the statute regardless of whether she actually had an employment relationship with that employer. Hence, courts have almost universally held that the scope of the term "any individual" is limited to employees.

*Llampallas*, 163 F.3d at 1243-44.

in *Yeldell v. Cooper Green Hospital, Inc.,* 956 F.2d 1056 (11th Cir. 1992), that such an avenue of relief is available to her.  In *Yeldell,* the court stated that "Title VII actions are not appropriately brought against government officials in their personal capacities.  Such suits may be brought only against individuals in their official capacity *and/or* the employing entity." *Yeldell,* 956 F.2d at 1060 (emphasis supplied) (citing *Busby,* 931 F.2d at 772; *Harvey v. Blake,* 913 F.2d 226 (5th Cir. 1990)).

For several reasons, this court concludes that the Eleventh Circuit's use of the phrase "and/or" in *Yeldell* does not create a general rule that a Title VII plaintiff may proceed against *both* her employer *and* an agent of that employer in his official capacity.  First, the quoted passage from *Yeldell* was *dicta*, used by the court to explain the difference between individual capacity suits and official capacity suits.  Additionally, interpreting *Yeldell* to allow an employee to sue both an employer and an individual defendant would be inconsistent with the Eleventh Circuit's statement in *Busby* that a Title VII plaintiff may sue her employer "*either* by naming the supervisory employees as agents of the employer *or* by naming the employer directly." *Busby,* 931 F.2d at 772.  This disjunctive terminology indicates that a plaintiff must choose between employer and agent as her defendant, and she may not sue both.  Finally, the court's conclusion is consistent with the language of other Eleventh Circuit and district court opinions.  Recently, in *Dearth v. Collins,* 441 F.3d

931 (11th Cir. 2006),  the Eleventh Circuit reemphasized that "relief under Title VII is available against only the employer *and not against individual employees whose actions would constitute a violation of the Act . . . ." Id.* at 933.[53]   Further, in the context of a civil rights claim filed under 42 U.S.C. § 1983, the Eleventh Circuit has held that, since suits against a government employee in his official capacity are functionally equivalent to suits against his employer, "there no longer exists a need to bring official-capacity actions against local government officials." *Busby,* 931 F.2d at 776.[54]   Other district courts within this circuit have held that a Title VII plaintiff may not proceed both against her employer, and against an individual defendant in his official capacity.  *See, e.g., Garrison v. Montgomery County Bd. of Education,* No. Civ.A.2:05CV549-WHA, 2006 WL 625876, at *4 (M.D. Ala. March 10, 2006) ("[S]ince the employer is a named defendant, official capacity claims against [individual] defendants in their official capacities are due to be dismissed as redundant.").

Based on all the above, this court concludes that a Title VII plaintiff cannot proceed both against her employer, and against an individual agent of the employer

---

[53]The Eleventh Circuit added that relief is available only against the employer, "*regardless* of whether the employer is a public entity or a private company." *Dearth,* 441 F.3d at 933 (emphasis in original) (citations omitted).

[54]The Eleventh Circuit has recently adopted this proposition in an unpublished decision in a Title VII case.  *See James v. Montgomery Regional Airport Authority,* 181 Fed. Appx. 930, 931 (11th Cir. 2006) (*per curiam*) (quoting *Busby,* 931 F.2d at 776).

sued in his official capacity.  Accordingly, all of plaintiff's claims against Sims, in both his individual and official capacities, are due to be dismissed.

## PART SIX

### *Judicial Estoppel*

**A.**   *Plaintiff's On-The-Job Injury*

Plaintiff sustained injuries to both of her knees in an automobile accident on January 27, 2003, while she was working for the City of Glencoe.[55]  Due to those injuries, she filed a workers compensation suit against the City of Glencoe in state court.  She gave a deposition in that case on December 21, 2004, and was asked the reason for her "leaving the employment of the Glencoe police."  She responded, "Well, the main reason was just, you know, physically it was hurting to do the job. And then when we moved to Boaz, I knew that I wouldn't be able to continue to drive back and forth and do the job also."[56]  She also testified that she felt like her knee injury would prevent her from performing certain necessary duties of a police job, including running, sitting in a patrol car for long periods of time, and lifting.[57]

---

[55]Doc. no. 20 (evidentiary submission of defendant Chris Sims), at Exhibit 1 (Deposition of Kelly R. Smith (now Kelly Masters) in *Kelly R. Smith v. City of Glencoe,* Civil Action No. CV-04-918-WAM in the Circuit Court of Etowah County, Alabama), at 25-26, 31-33; doc. no. 24 (evidentiary submission of defendant City of Glencoe), at Exhibit 1 (Deposition of Kelly R. Smith (now Kelly Masters) in *Kelly R. Smith v. City of Glencoe,* Civil Action No. CV-04-918-WAM in the Circuit Court of Etowah County, Alabama), at 25-26, 31-33.

[56]*Id.* at 13-14.

[57]*Id.* at 16, 49-50, 59.

**B.**   *Analysis of Defendants' Estoppel Arguments*

Defendants argue plaintiff is judicially estopped from claiming, in this case, that she was constructively discharged. Specifically, defendants assert that plaintiff's deposition testimony in her workers' compensation suit is inconsistent with her sworn allegation in this case that she was forced to resign due to sexual harassment and discrimination.

"Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process," and "to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Transamerica Leasing, Inc. v. Institute of London Underwriters,* 430 F.3d 1326, 1335 (11th Cir. 2005) (citing *New Hampshire v. Maine,* 532 U.S. 742, 749-50 (2001)). The Eleventh Circuit considers two primary factors in deciding whether to apply judicial estoppel:   (1) whether "the allegedly inconsistent positions were made under oath in a prior proceeding"; and (2) whether the inconsistencies were "calculated to make a mockery of the judicial system." *Transamerica,* 430 F.3d at 1335 (citing *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir. 2002)). The Supreme Court has also noted that three additional factors may be considered in determining whether a party intended to make a mockery of the system: *i.e.,*

-37-

> 1) whether a party's later position was clearly inconsistent with its earlier position; 2) whether the party succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and 3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Transamerica,* 430 F.3d at 1335 (citing *New Hampshire,* 532 U.S. at 750-51). It is important to note, however, that these factors are not "'inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel'; rather, additional considerations may be appropriate." *Transamerica,* 430 F.3d at 1335 (citing *New Hampshire,* 532 U.S. at 751).

Here, plaintiff's deposition testimony in her workers' compensation case clearly was under oath. That deposition was taken on December 21, 2004, just four months after plaintiff's August 13, 2004 letter to the EEOC. The allegations in that letter are clearly inconsistent with plaintiff's sworn deposition testimony that "the main reason" she left the employment of the City of Glencoe Police Department was the pain attendant to her on-the-job injury: "physically it was hurting to do the job." She also testified to a belief that the knee injury would prevent her from performing certain, necessary duties of a police officer, such as running, sitting in a patrol car for long periods, and lifting. Her move to Boaz, Alabama also made a daily commute

untenable.  This court therefore concludes that plaintiff's varying statements were "calculated to make a mockery of the judicial system."  *Transamerica,* 430 F.3d at 1335.

The record does not indicate whether or not the state court accepted plaintiff's prior deposition testimony.  Even so, the other factors weigh in favor of applying estoppel.  Most importantly, plaintiff's constructive discharge claim in this case is "clearly inconsistent" with her prior deposition testimony.   In her workers compensation case, plaintiff testified that the she left her employment with the City of Glencoe *because of her physical problems*.  Plaintiff was no doubt aware that this testimony would enhance her workers compensation recovery.  She was also aware that approximately four months prior to her deposition — in August of 2004 — she wrote her initial letter to the EEOC, claiming that she had resigned from her job *because she was subjected to such a severe sexually hostile working environment*. Then, several months *after* her workers compensation deposition — in September of 2005 — plaintiff filed this suit, claiming that she was forced to resign "[*d*]*ue to the unbearable hostile work environment created by the continuous sexual harassment and subsequent threats and intimidation*."[58]   In short, plaintiff appears willing to explain her resignation from employment with the City of Glencoe in whatever terms

---

[58]Doc. no. 1 (Complaint), at ¶ 18 (emphasis supplied).

benefit her most at the time.  This court will not allow plaintiff to so manipulate the judicial system, and to derive the unfair advantage of potential double recoveries. Accordingly, plaintiff will be judicially estopped from asserting in this lawsuit that she was constructively discharged from her employment with the City of Glencoe due to sexual harassment or discrimination.  Summary judgment will be granted on plaintiff's constructive discharge claim.

## PART SEVEN

### *Conclusion*

For all of the foregoing reasons, both defendants' motions to strike will be denied.  The motion for summary judgment by defendant Chris Sims will be granted, and all of plaintiff's claims against Sims will be dismissed.  The motion for summary judgment by defendant City of Glencoe will be granted in part and denied in part, and plaintiff's constructive discharge claim against the City of Glencoe will be dismissed. An appropriate order will be entered contemporaneously herewith.

DONE this 10th day of January, 2007.

_____
United States District Judge